# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ELLIS SKOGLUND                                        CIVIL ACTION

VERSUS                                                NO. 18-386

PETROSAUDI OIL SERVICES                               SECTION: "B"(4)
(VENEZUELA) LTD., PETROSAUDI OIL
SERVICES LTD., SATURN DRILLSHIPS
PTE. LTD

## ORDER AND REASONS

Defendants PetroSaudi Oil Services (Venezuela) Ltd., Petro Saudi Oil Services Ltd. and Saturn Drillships Pte. Ltd. (collectively "PetroSaudi") filed a motion to dismiss Plaintiff's claims for lack of personal jurisdiction, or alternatively on the grounds of forum non conveniens. Rec. Doc. 16. Plaintiff timely filed an opposition. Rec. Doc. 19. Defendants then sought, and were granted, leave to file a reply. Rec. Doc. 26. Plaintiff sought leave to file a surreply but was denied. Rec. Doc. 33.

For the reasons discussed below,

**IT IS ORDERED** that Defendants' motion to dismiss is **GRANTED** and Plaintiff's claims against Defendants are **DISMISSED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Ellis Skoglund filed a complaint against defendants Petrosaudi Oil Services (Venezuela) Ltd., Petrosaudi Oil Servies Ltd., Procurement Services (Delaware) Inc, & Saturn Drillships Pte. Ltd. alleging negligence under the Jones Act,

1

unseaworthiness, and failure to fulfill maintenance and cure obligations. Rec. Doc. 1. Plaintiff Skoglund was employed as a deck foreman by PetroSaudi aboard the Petrosaudi Saturn, a drillship located in waters off Venezuela. *See id.* at 2. Plaintiff alleges that he was moving equipment below deck on the PetroSaudi Saturn, per his superior's orders, when the hoist and trolley failed, dropping the equipment on his foot and resulting in the loss of several toes, a traumatic brain injury, a brain bleed, legal blindness, and other injuries. *See id.* at 3. Plaintiff alleges that Defendants transported him to Trinidad and Tobago for emergency medical treatment, and then to Houma, Louisiana for additional treatment. *See id.* at 4.

Plaintiff argues that defendants are his Jones Act employer and are therefore liable for their negligence, and that of their employees, which caused his injuries. *See id.* at 5. Defendants filed their answer (Rec. Doc. 5), denying plaintiff's claims and arguing, among other things, that the Court lacks personal jurisdiction over them as foreign defendants and that plaintiff's claims are subject to the exclusive jurisdiction of the Courts of England and Wales pursuant to a forum selection clause and choice-of-law clause included in the employment contract. *See* Rec. Doc. 5 at 8. Defendants filed the instant motion to dismiss (Rec. Doc.

16)[1]. Plaintiff filed a response asserting that this court has general jurisdiction over defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) and that the forum-selection clause is unenforceable.

**THE PARTIES' CONTENTIONS**

Defendants PetroSaudi Oil Services (Venezuela) Ltd, Petro Saudi Oil Services Ltd. and Saturn Drillships Pte. Ltd. (collectively "PetroSaudi") filed the instant motion to dismiss for lack of personal jurisdiction or alternatively on the grounds of *forum non conveniens*. Rec. Doc. 16. Defendants argue that the case against them should be dismissed for lack of personal jurisdiction because none of the PetroSaudi defendants are incorporated or have their principal place of business in Louisiana, and their contacts with the United States are not so continuous and systematic as to render them at home in the United States. *See* Rec. Doc. 16-1 at 8-13. Furthermore, defendants assert that plaintiff's employment agreement contains an enforceable forum selection clause, identifying the Courts of England and Wales as the proper forum for all claims, and a choice of law clause selecting English law. *See id.* at 14-16. Therefore, defendants argue that the case should be dismissed under the doctrine of *forum non conveniens*. *See id.* at 16-19.

---

[1] Defendant Procurement Services (Delaware) Inc. filed a separate Motion to Dismiss (Rec. Doc. 17), which will be analyzed in a separate order and reasons.

Plaintiff argues that Federal Rule of Civil Procedure 4(k)(2) provides the Court jurisdiction because defendants do not concede to the general jurisdiction of any specific state but their contacts with the United States as a whole satisfy due process. *See* Rec. Doc. 19 at 7. Specifically, plaintiff alleges that he was recruited to work for PetroSaudi in Louisiana, and that Petrosaudi has a practice of recruiting other workers within Louisiana. *Id.* at 4. Additionally, plaintiff alleges Petrosaudi operates a de facto business office in Houston. *Id.* at 5. Plaintiff claims that both the Human Resources Manager who managed his healthcare after his injuries occurred, Nysia Henderson, and the individual who recruited him, Chris Hudson, are based in Houston. *Id.* at 4. Plaintiff asserts that the forum selection clause in the employment contract, coupled with a choice of law clause, amounts to a prospective waiver of a statutory right and therefore is void as against public policy. *Id.* at 8. Plaintiff further asserts that the forum selection clause was not feely negotiated and was not negotiated by parties with equal bargaining power. *Id.* at 11.

**LAW AND ANALYSIS**

Defendants move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In a 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence." *Patterson v. Aker Sols. Inc.*, 826

F.3d 231, 233 (5th Cir. 2016) (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). The Court is not restricted to pleadings and may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell*, 317 F.3d at 469 (5th Cir. 2002). The allegations of the complaint, except as controverted by opposing affidavits, are taken as true and all factual conflicts are resolved in the plaintiff's favor. *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). The Fifth Circuit has stated that although the plaintiff must make out a prima facie case of general jurisdiction, conclusory allegations of contacts with a forum, even if uncontroverted, cannot establish general jurisdiction. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). The Supreme Court has established that a court may assert general jurisdiction over foreign corporations when their "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017); *see also Daimler AG v. Bauman*, 571 U.S. 117, (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, (2011). The paradigm forums in which a foreign corporate defendant is considered to be at home are the place of incorporation, and the principal place of business. *See BNSF*, 137 S.Ct. at 1558. Additionally, the Court has held that there may be

an "exceptional case" where a corporate defendant's contacts with another forum are "so substantial and of such a nature as to render [it] at home in that State." *Id.* (quoting *Daimler,* 571 U.S. at 139 n. 19). The Court will analyze whether there is a sufficient basis for the assertion of personal jurisdiction over defendants or whether dismissal under Rule 12(b)(2) is appropriate below.

Plaintiff asserts that this Court has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) provides for personal jurisdiction in any district court "for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004). To satisfy due process, the defendant's contacts with the United States must be so continuous and systematic as to render it essentially at home in the United States. *See Patterson,* 826 F.3d at 234. The Court will analyze whether Rule 4(k)(2) provides for personal jurisdiction over the defendants in this case.

Defendants alternatively move for dismissal under the doctrine of *forum non conveniens*, in light of the forum selection clause contained in plaintiff's employment agreement. The Supreme Court has held that the proper way to enforce a forum-selection clause pointing to a foreign forum is through the doctrine of *forum*

*non conveniens,* and courts should evaluate the clause in the same way as they would a clause pointing to a federal forum. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 61 (2013). The Fifth Circuit applies a strong presumption in favor of enforcing mandatory forum-selection clauses, which can only be overcome "by a clear showing that [the clause] is unreasonable." *See Al Copeland Investments, L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018). Factors to consider in determining whether a forum-selection clause is unreasonable include: 1) whether the incorporation of the forum-selection clause into the agreement was the product of fraud or over overreaching; 2) whether the party seeking to escape enforcement will, for all practical purposes, be deprived of its day in court because of the grave inconvenience or unfairness of the selected forum; 3) whether the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or 4) whether the enforcement of the clause would contravene a strong public policy of the forum state. *See Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997). In applying the doctrine of forum non conveniens, normally a court determines whether there is an adequate alternative forum, and if so, decides which forum is best suited to litigation based on private and public interest factors, giving weight to the plaintiff's choice of forum. *See Barnett v. DynCorp International, L.L.C.,* 831 f.3D 296, 300 (5th Cir. 2016).

However, this analysis differs when there is a valid forum selection clause. *See Atlantic Marine,* 571 U.S. at 63. In the presence of a forum-selection clause, courts should give no weight to the plaintiff's choice of forum and should not consider arguments about parties' private interests because when parties agree to a forum-selection clause, "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582 (2013). Therefore, a court may consider arguments about public-interest factors only. The Court will analyze the forum selection clause to determine whether it is enforceable and whether dismissal is appropriate under *forum non conveniens.*

A. This Court cannot exercise general personal jurisdiction over defendants and therefore dismissal under Rule 12(b)(2) is appropriate.

This Court cannot assert personal jurisdiction over defendants as they are not at home within the state of Louisiana. As defendants note in their motion to dismiss, there is no disagreement over the fact that the alleged incident at issue in this case occurred outside of the United States, and therefore specific jurisdiction is not asserted. *See* Rec. Doc. 16-1 at 8. Therefore, the Court must only consider whether it may assert general personal jurisdiction over defendants. The proper forum

for exercising general jurisdiction over a corporation is where that corporation is "at home." *See BNSF Ry. Co.*, 137 S.Ct. 1549. As discussed above, the paradigm locations for the exercise of general jurisdiction are the place of incorporation and the principal place of business. In this case, all of the PetroSaudi defendants joined in the instant motion are incorporated in foreign countries. *See* Rec. Doc. 16-1 at 3. PetroSaudi Oil Services Ltd. is formed under the laws of the Cayman Islands, PetroSaudi Oil Services (Venezuela) Ltd. is formed under the laws of Barbados, and Saturn Drillships Pte. Ltd. is formed under the laws of Singapore. *See id.* Defendants also state that their respective principal places of business are the Cayman Islands, Barbados, and Singapore. *See id.* Plaintiff asserts that defendants maintain a 'de facto' principal business office in Houston, Texas. *See* Rec. Doc. 1 at 1-2. Defendants correctly note that the term 'de facto principal business office' is not one that appears within the caselaw. However, the Fifth Circuit has held that "determining a corporation's principal place of business is a factual inquiry dependent on a number of factors." *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 920 (5th Cir. 2001). The Fifth Circuit applies a total activity test, in which the Court looks "to the nature, location, importance, and purpose of a corporation's activities and the degree to which those activities bring the corporation into contact with the local community." *Id.* (quoting *Nauru*

*Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir.1998)). However, this Court sits in the Eastern District of Louisiana, and therefore whether the defendants' principal place of business is in Houston, TX or overseas does not change the fact that it is not alleged to be in Louisiana by either party. Therefore, neither of the two paradigmatic locations for the exercise of general jurisdiction are within the Court's jurisdiction.

There still remains the "exceptional" case identified by the Supreme Court, where a corporate defendant's contacts with another forum are "so substantial and of such a nature as to render [it] at home in that State." *See BNSF*, 137 S.Ct. at 1558 (quoting *Daimler*, 134 S.Ct. at 761 n.19). The Supreme Court has found a "sufficient basis for the exercise of general jurisdiction over a non-resident defendant in only one modern case." *Patterson*, 826 F.3d at 235 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). In that case, *Perkins*, the Supreme Court found that a foreign corporate defendant had sufficiently extensive contacts with the state because it maintained an office with company files in the state, maintained bank accounts in the state, used a state bank as a transfer agent for stock of the company, corresponded from the state, paid salaries in the state, and held directors meetings in the state. *See Perkins*, 342 U.S. at 445 (1952). Defendants' interactions with the state of Louisiana do

not rise to this level. The contacts that plaintiff alleges defendants had with Louisiana are: 1) defendants recruited plaintiff while he was in Louisiana; 2) defendants paid for plaintiff's medical treatment in Louisiana; and 3) defendants have a practice of recruiting other workers in Louisiana. *See* Rec. Doc. 19 at 4. Defendants' contact with plaintiff via LinkedIn messaging while plaintiff was located in Louisiana is not a substantive or repeated contact with the state of Louisiana, and therefore is not sufficient to render defendants 'at home' in Louisiana. Additionally, plaintiff's medical treatment was in Louisiana because his domicile was Louisiana; this is not evidence of defendants' contacts with the state but rather of plaintiff's contacts, which is not a proper basis for asserting personal jurisdiction over defendants. Finally, simply recruiting workers from Louisiana as well as from other states, without any additional business activities in the state, is not sufficient to render defendants at home in Louisiana. Therefore, defendants do not meet any of the three criteria for general jurisdiction in this state – they are not incorporated in Louisiana, their principal place of business is not in Louisiana, and their contacts with Louisiana are not so substantial and of such a nature as to render them at home in Louisiana.

B. Rule 4(k)(2) does not provide general personal jurisdiction in this case because Defendants do not have sufficient contacts with the United States

Defendants' contacts with the United States as a whole are not sufficient to provide this Court general personal jurisdiction under Rule 4(k)(2). Plaintiff pleads that Fed. R. Civ. P. 4(k)(2) provides jurisdiction. *See* Rec. Doc. 1 at 2. As discussed above, Rule 4(k)(2) provides for personal jurisdiction in any district for cases arising under federal law where: 1) the defendant is not subject to jurisdiction in any particular state; and 2) the defendant's contacts with the United States as a whole are sufficient to satisfy due process. *See Patterson*, 826 F.3d at 234. The present case is one that arises under federal law, as the Fifth Circuit has held that the federal law includes admiralty cases for the purposes of Rule 4(k)(2). *See World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996). Plaintiff correctly notes that he does not carry the burden of negating jurisdiction over defendants in every state when pleading jurisdiction under Rule 4(k)(2). *See* Rec. Doc. 19 at 5. The Fifth Circuit has held that as "long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004). Defendant does not concede to the jurisdiction of any other state in any of its pleadings; therefore,

this Court may use Rule 4(k)(2) as the basis of personal jurisdiction as long as the other requirements are met. This analysis turns on whether defendants' contacts with the United States as a whole are sufficient to satisfy due process.

Defendants' contacts with the United States are not so continuous and systematic as to render them essentially at home in the United States and therefore do not satisfy due process. Plaintiff asserts the following contacts as the basis for jurisdiction under Rule 4(k)(2): 1) Defendant Petrosaudi Oil Service, LTD owns a wholly owned American subsidiary; 2)Chris Hudson, who plaintiff alleges works for PetroSaudi in Houston, contacted plaintiff while plaintiff was in Louisiana; 3) defendants brought plaintiff to Louisiana for medical care; 4) plaintiff's main contact after his accident was a Petrosaudi employee whose LinkedIn profile and email signature allegedly identify Houston, TX as her location; and 5) a Petrosaudi email allegedly referenced a 'management team' in Houston. *See* Rec. Doc. 19 at 6-7. Taken together, these alleged contacts do not make defendants 'at home' in the United States. The existence of a U.S. subsidiary is not an adequate basis for the exercise of personal jurisdiction over a parent company. *See Daimler AG v. Bauman,* 571 U.S. 117, 134-39 (2014). Additionally, plaintiff's assertion that a number of defendants' employees are present in United States is not a sufficient basis for asserting personal jurisdiction. Even

if some of defendants' employees are in the United States, it would not rise to the level of contact necessary to render defendants at home in the United States. The Fifth Circuit has "declined to exercise general personal jurisdiction over a corporation where its most significant and continuous contact with the forum is having employees located in the forum." *Patterson,* 826 F.3d at 235 (holding that a foreign company sending eleven of its employees to the United States to enter into secondment agreements was insufficient to make that company at home in the United States); *see also Bowles v. Ranger Land Sys., Inc.*, 527 Fed.Appx. 319, 321–22 (5th Cir. 2013)). The remaining contacts alleged by defendant, such as the fact that plaintiff's medical treatment occurred in Louisiana, are a result of plaintiff's residence in Louisiana and not an example of defendants' contacts with the United States. Therefore, it is not relevant to determining whether defendants are at home in the United States.

A brief survey of cases where the Fifth Circuit has found that a foreign corporate defendant had sufficient contacts with the United States to render it at home demonstrates the high bar for asserting personal jurisdiction pursuant to Rule 4(k)(2). In *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, the Fifth Circuit found that the following factual allegations, if established, would be sufficient to make a prima facie showing of a foreign company with sufficient national contacts: defendant's

fleet of vessels regularly called at most major ports in the United States, defendant established and advertised an America Line to provide service for U.S. Gulf Ports, defendant maintained another line of vessels to carry cargo from the United States, defendant's vessel had previously been detained in the United States, defendant's ship called and discharged plaintiff's cargo in the United States, defendant had been named in approximately fifty actions in United States District Courts, and defendant had been a party in another suit in the United States that was not dismissed for lack of personal jurisdiction. *See System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001). In *Adams v. Unione Mediterranea Di Sicurta,* the Fifth Circuit found that a foreign insurance company had sufficient ties to the United States as a whole to assert personal jurisdiction where the company paid claims to over 100 U.S. companies, insured hundreds of shipments to the U.S., made shipments valued over 130 million, and conducted significant business in the U.S. *See Adams v. Unione Mediterranea Di Sicurta,* 364 F.3d 646 (5th Cir. 2004). Defendants contacts with the United States in this case do not rise to the level of these 'exceptional' cases. Defendants assert in their affidavit that they conduct operations worldwide, employ crewmen from around the world, operate the PetroSaudi Saturn drillship exclusively in the Caribbean, and derive no revenue from the United States. Rec. Doc. 16-3. Therefore, it appears that defendants

conduct their business activities outside of the United States and their revenue is also derived entirely from business conducted outside of the United States. Plaintiffs assertions, even taken as true, do not contradict these assertions and do not demonstrate that defendants conduct any business within the United States. In *Patterson*, the Fifth Circuit described *Perkins* as the "benchmark of the exceptional case" for the exercise of general jurisdiction over a foreign corporate defendant and noted that the defendant's contacts in the case before it fell "well short of effectively operating its business within the United States" as the defendant in *Perkins* had been. *See* Patterson 826 F.3d at 235. Similarly, in this case, defendants' contacts with the United States fall short of what is required to render it at home here.

C. Dismissal on the grounds of forum non conveniens is warranted because the employment agreement contains a valid and enforceable forum selection clause

The employment agreement between plaintiff and defendants contains a valid and enforceable forum selection clause, and therefore dismissal is warranted under the doctrine of *forum non conveniens*. The employment agreement states that "[e]ach party irrevocably agrees to submit to the exclusive jurisdiction of the courts of England and Wales over any claim or matter arising under or in connection with this Agreement." *See* Rec. Doc. 16-3 at 21. The Supreme Court has held that forum selection clauses in

admiralty cases are presumptively valid and enforceable. *See M/S Bremen v. Zapata Off-Shore,* 407 U.S. 1, 11 (1972). As discussed above, plaintiff must demonstrate that the clause is unreasonable for a challenge to succeed. The Supreme Court has identified four bases for deeming a forum selection clause unreasonable: 1) the incorporation of the forum-selection clause into the agreement was the product of fraud or over overreaching; 2) the party seeking to escape enforcement will, for all practical purposes, be deprived of its day in court because of the grave inconvenience or unfairness of the selected forum; 3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or 4) the enforcement of the clause would contravene a strong public policy of the forum state. *See Haynsworth*, 121 F.3d at 963. These are considered in turn.

First, the clause in this agreement does not appear to be the product of fraud or overreaching. Plaintiff alleges that this was a contract of adhesion with a 'take it or leave it' offer, and that he had no reason to believe the contract would contain such a forum-selection clause. *See* Rec. Doc. 19 at 12. Defendants assert that every PetroSaudi employment agreement contains this clause and all employees sign the agreement. *See* Rec. Doc. 16-1 at 2. Importantly, plaintiff signed the employment agreement, and initialed every page, including the page containing the forum selection clause. *See* Rec. Doc. 16-3. Defendants correctly note

that it is well settled that "a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that the did not read or understand it." *Gines v. D.R. Horton, Inc.,* 699 F.3d 812, 820-21 (5th Cir. 2012). Therefore, simply arguing that plaintiff was not aware that the contract contained a forum-selection clause is not sufficient to render it unreasonable. Additionally, plaintiff's argument that the employment offer he accepted was materially altered by the employment agreement he thereafter signed is not an appropriate basis for a challenge to the enforceability of the forum selection clause. The Fifth Circuit has stated that fraud and overreaching challenges must be specific to the forum selection clause in order to invalidate it. *See Haynsworth,* 121 F.3d at 963. The Court held that challenges "to the contract as a whole . . . are insufficient; the claims of fraud or overreaching must be aimed straight at the [forum selection clause] in order to succeed." *Id.* Therefore plaintiff's argument about the employment agreement has no bearing on the forum-selection clause as it applies to the entire agreement. Plaintiff further argues that there was unequal bargaining power because he was out of work and badly needed income for his family. *See* Rec. Doc. 19 at 12. However, in *Carnival Cruise Lines,* the Supreme Court upheld the validity of a forum selection clause in a routine contract that was not bargained for as long as it was reasonable. *See Carnival Cruise Lines, Inc. v. Shute,* 499

U.S. 585 (1991). The Fifth Circuit has compared the contract that was upheld in *Carnvival Cruise Lines* to contracts of employment for seamen aboard international vessels, stating that they are similarly routine and that seamen do not have much bargaining power. *See Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 221 (5th Cir. 1998). The Fifth Circuit upheld the enforceability of forum selection clauses in seamen's contracts, stating that they reduce the vessel owner's exposure to suits in forums all over the world and inform the seamen of where their causes of action can be maintained. *Id.* Therefore, plaintiff's arguments that the forum-selection clause is the product of fraud are unpersuasive.

Plaintiff will not be deprived of his day in court because of this forum-selection clause. The Fifth Circuit has previously upheld forum-selection clauses mandating a country other than the one where plaintiff resides, noting that "with modern conveniences of electronic filing and videoconferencing," it is not necessary for the plaintiff to physically travel to the other jurisdiction. *See Calix-Chacon v. Glob. Int'l Marine, Inc.*, 493 F.3d 507, 515 (5th Cir. 2007). Furthermore, plaintiff provides no evidence that the law of the selected forum would be fundamentally unfair to him. This is a high bar to meet, as the Supreme Court has noted that "the remedy provided by the alternative forum [must be] so clearly inadequate or unsatisfactory that it is no remedy at all."

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). A smaller potential remedy or different theories of defense are not sufficient to render the law of the selected forum 'fundamentally unfair.' *See id.* Plaintiff does not allege facts that show that the selected forum would provide him no remedy at all, and the argument that specific defenses could not be raised are insufficient to meet this factor. As the Fifth Circuit has stated, "the fact that *certain types of remedies* are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in that forum that would allow the plaintiff to seek *some* relief." *Weber v. PACT XPP Technolgoies, AG,* 811 f.3D 758, 774 (5th Cir. 2016). Plaintiff does not allege any facts to indicate that the courts of England and Wales are not 'basically fair court system[s]'. Furthermore, the Fifth Circuit has previously recognized that "England [is] a forum that American courts repeatedly have recognized to be fair and impartial." *Haynsworth,* 121 F.3d at 967. Therefore, plaintiff is not deprived of his day in court and the law of the selected forum will not be fundamentally unfair to him.

Plaintiff's argument that enforcement of the forum-selection clause is void as against public policy is flawed. Plaintiff asserts that the forum selection clause and choice of law clause in his employment contract constitute a prospective waiver of statutory rights. *See* Rec. Doc. 19 at 8. However, the cases

plaintiff primarily relies on as support for his argument have been overturned or abrogated. Plaintiff argues that in a case in this district, the court found a choice of law clause coupled with a forum selection clause in a seaman's employment agreement to be an impermissible prospective waiver of Jones Act rights. *See* Rec. Doc. 19 at 9 (citing *Asignacion v. Rickmes Genoa Schiffahrts,* No. 11-627, 2011 WL 2118740 (E.D.La. May 25, 2011)). However, the Fifth Circuit reversed the district court judge's ruling in that case, clarifying that the Supreme Court's prospective waiver language was dicta and holding that the district court "erred when it relied on the doctrine to afford [plaintiff] an opportunity to pursue his claims." *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1021 (5th Cir. 2015). The Fifth Circuit went further by noting that the Supreme Court declined to apply the doctrine even in the cases where it was referenced as dicta because it was premature to do so when determining the enforceability of an arbitration agreement, rather than at the award-enforcement stage. *Id.* Similarly, plaintiff relies heavily on the Eleventh Circuit's decision in *Thomas v. Carnival Corp*, where the court held that an arbitration clause coupled with a foreign choice-of-law clause operated as a prospective waiver of statutory rights. *Thomas v. Carnival Corp,* 573 F.3d 1113 (11th Cir. 2009). Although Eleventh Circuit decisions are not binding on this court, it is important to recognize that *Thomas* is no longer

good law even in the Eleventh Circuit. *Thomas* was abrogated by a subsequent Eleventh Circuit case, *Lindo v NCL*, which held that the *Thomas* court incorrectly relied on the Supreme Court's prospective waiver language. *Lindo v. NCL,* 652 F.3d 1257 (11th Cir. 2011). The Eleventh Circuit noted that the prospective waiver language "is undisputably dicta" and stated that "the Supreme Court has never once invalidated an arbitration agreement on that basis." *See* Lindo, 652 F.3d at 1278. Furthermore, the Fifth Circuit previously noted that, even setting aside the fact that the prospective waiver language is dictum, it, "by its own terms, is limited to the antitrust context." *See Haynsworth,* 121 F.3d at 968. The Court refused to give the "single sentence . . . sweeping implications" by applying it in other contexts. *Id.* Therefore, there is no precedent for invalidating a forum-selection clause such as the one before the Court today on the grounds that it is a prospective waiver of statutory rights. Considering the factors above, plaintiff has not carried his burden of demonstrating that the forum-selection clause is unreasonable, and therefore it is valid.

Given the presence of a valid forum-selection clause, dismissal is warranted under the doctrine of forum non conveniens. As explained above, in the presence of a valid forum-selection clause, the court is not to consider the plaintiff's choice of forum and the parties' private interests in determining whether dismissal is warranted pursuant to forum non conveniens.

Furthermore, as the courts of England and Wales are an adequate alternative forum, this leaves only the consideration of public interest factors. Public interest factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *See Atlantic Marine,* 571 U.S. at n. 6 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)). In this case, there are no facts alleged that would indicate administrative difficulties and court congestion in England as compared to the United States, therefore this factor is neutral. The controversy is not a localized one as the injury occurred abroad, therefore this second factor likely weighs in favor of dismissal. Finally, in deciding whether the forum is "at home with the law," we consider the fact that the choice-of-law clause identifies English law as the chosen law to apply. This factor would favor dismissal as well.[2] Taken together, the public interest factors weigh in favor of dismissal pursuant to the doctrine of forum non conveniens.

---

[2] Because there is a contractual choice-of-law clause, it is not necessary to conduct the choice of law analysis under the *Lauritzen-Rhoditis* factors to determine which country's law applies. *See Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.,* 585 F.3d 236, 242 (5th Cir. 2009) (citing *Chan v. Society Expeditions, Inc.,* 123 F.3d 1287 (9th Cir.1997), which stated that "*in the absence* of a contractual choice-of-law clause, federal courts sitting in admiralty apply federal maritime choice-of law principles derived from the Supreme Court's decision in *Lauritzen v Larsen* [] and its progeny.") (emphasis added)

Therefore, considering the fact that defendants are not at home in Louisiana or the United States, and that plaintiff's employment agreement contains a valid and enforceable forum-selection clause, dismissal is appropriate. In recognizing the importance of enforcing forum-selection clauses in the international sphere, the Supreme Court opined that "we cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts." *Scherk v. Alberto-Culver Co.,* 417 U.S. 519 (1974). This principle applies to the case before the Court today.

New Orleans, Louisiana, this 20th day of November, 2018.


_____

SENIOR UNITED STATES DISTRICT JUDGE